UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

DENISE M. HITE, a/k/a            :
MCCASKILL,                       :
                                 :
           Plaintiff             :
                                 :      No. 3:12-CV-00016
      vs.                        :
                                 :      (Judge Nealon)
CAROLYN W. COLVIN, ACTING        :
COMMISSIONER OF SOCIAL           :                FILED
SECURITY,                        :             SCRANTON
                                 :
           Defendant             :             JUL - 2 2013

                         **MEMORANDUM**

                                        PER _____
**Background**                              DEPUTY CLERK

         The above-captioned action is one seeking review of a

decision of the Commissioner of Social Security ("Commissioner")

denying Plaintiff Denise M. Hite's claim for social security

disability insurance benefits.

         Hite protectively filed her application for disability

insurance benefits on May 4, 2006. Tr. 94, 98, 142-147 and 165.[1]

The application was initially denied by the Bureau of Disability

Determination[2] on November 6, 2006. Tr. 115-119.  On January 9,

2007, Hite requested a hearing before an administrative law judge.

Tr. 120.  On July 9, 2008, a hearing was held before an

administrative law judge. Tr. 35-54.  On July 22, 2008, the

_____

1.  References to "Tr.__" are to pages of the administrative
record filed by the Defendant as part of the Answer on March 12,
2012.

2.  The Bureau of Disability Determination is an agency of the
state which initially evaluates applications for disability
insurance benefits on behalf of the Social Security
Administration.  Tr. 116.

administrative law judge issued a decision denying Hite's application and on July 29, 2008, Hite filed a request for review with the Appeals Council. Tr. 98-106 and 133. After 10 months had passed, the Appeals Council remanded the case to a different administrative law judge for further consideration. Tr. 111-114. In the order of remand, the Appeals Council directed that the administrative law judge obtain supplemental evidence from a vocational expert to clarify the effect of Hite's limitations on her occupational base. Id. A second administrative hearing was held on September 29, 2009, at which a vocational expert testified. Tr. 19 and 55-91. On January 11, 2010, the administrative law judge issued a decision denying Hite's application. Tr. 19-29. On February 2, 2010, Hite filed a request for review with the Appeals Council. Tr. 12 and 15. After about 21 months had elapsed, the Appeals Council on November 4, 2011, concluded that there was no basis to grant Hite's request for review. Tr. 1-6. Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

Hite then filed a complaint in this court on January 4, 2012. Supporting and opposing briefs were submitted and the appeal[3] became ripe for disposition on June 25, 2012, when Hite filed a reply brief.

---

3. Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." M.D.Pa. Local Rule 83.40.1.

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." It is undisputed that Hite met the insured status requirements of the Social Security Act through December 31, 2007. Tr. 19, 21, 147, 166 and 171. In order to establish entitlement to disability insurance benefits, Hite was required to establish that she suffered from a disability on or before that date. 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. § 404.131(a)(2008); see Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990).

Hite, who was born in the United States on November 13, 1968, graduated from high school in 1986 and can read, write, speak and understand the English language and perform basic mathematical functions. Tr. 177, 184 and 309. During her elementary and secondary schooling, Hite attended regular education classes. Tr. 184. After high school, Hite attended college for 3 semesters. Tr. 309.

Hite has past relevant employment[4] as a waitress which was described by a vocational expert as semi-skilled, light work.[5]

---

4. Past relevant employment in the present case means work performed by Hite during the 15 years prior to the date her claim for disability was adjudicated by the Commissioner. 20 C.F.R. §§ 404.1560 and 404.1565.

5. The terms sedentary, light, medium and heavy work are defined in the regulations of the Social Security Administration as follows:

(a) *Sedentary work*. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

(b) *Light work*. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

(c) *Medium work*. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can do sedentary and light work.

(d) *Heavy work*. Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or

(continued...)

4

Hite reported that she worked as a waitress from 1996 to 2003. Tr. 204.

The records of the Social Security Administration reveal that Hite had earnings in the years 1987, 1989, 1993 through 2003, 2006 and 2007. Tr. 148 and 162. Hite's annual earnings range from a low of $69.00 in 1993 to a high of $15,095.61 in 1999. Id. Hite's total earnings during those 15 years were $76,829.39. Id.

In 2002, Hite worked as a waitress for Big Ten Truck Stop, Inc., and Scranton Petro LP earning a total of $14,093.99 which figure includes tips in the amount of $10,586.27. Tr. 151-152. Hite worked briefly in 2003 as a waitress at Scranton Petro LP and earned a total of $621.30 which figure includes tips in the amount of $440.00. Id. After 2003, Hite only worked for a short period in 2006 and 2007. In 2006, she worked at Old Forge Bank as a teller for "a few days" and earned $102.00. Tr. 152 and 309. The last place Hite worked was Silver Care, Inc., a nursing home in Pittston. Tr. 39 and 162. Hite testified that she only worked there "a couple days" as a nurse's aide. Tr. 39. The earning records maintained by the Social Security Administration reveal that she earned $561.88 in 2007. Tr. 162.

---

5.  (...continued)
        carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work.

20 C.F.R. § 404.1567.

Hite claims that she became disabled on January 15, 2003, because of both physical and mental impairments. Tr. 115, 178 and 187. The physical impairments alleged were back pain, dizziness, a tumor on the right leg[6] and scoliosis. Id. However, in the present appeal she primarily focuses on her mental impairments. Doc. 11, Plaintiff's Brief, p. 3-8. Hite alleges that she suffers from panic attacks and anxiety with agoraphobia.[7]

---

6. The medical records reveal that the tumor or lesion on the right femur (thigh bone) was monitored over several years and was considered benign and stable because it did not increase in size or appearance. Tr. 540.

7. According to the National Institutes of Health's website

> Panic disorder with agoraphobia is an anxiety disorder in which a person has attacks of intense fear and anxiety. There is also a fear of being in places where it is hard to escape, or where help might not be available.
>
> Agoraphobia usually involves fear of crowds, bridges, or being outside alone.  . . .
>
> Panic attacks involve short periods of intense symptoms, which peak within 10 minutes. Panic attack symptoms can include:

- Chest pain or discomfort

- Choking

- Dizziness or faintness

- Fear of being out of control

*    *    *    *    *    *    *    *    *

- Numbness or tingling

- Racing Heart

(continued...)

Id. Hite experienced a panic attack at the second administrative hearing which resulted in the hearing being recessed for five to six minutes before Hite could resume testifying. Tr. 73-74.

Hite testified at the administrative hearing and filed a document with the Social Security Administration in which she stated that because of her panic and anxiety disorder with agoraphobia she depends on others to assist her with daily activities, such as grocery shopping. Tr. 77-81 and 187. Hite's sister and mother corroborated the severity of her mental disorders. Tr. 214-215.

Her sister, Carol Ann Benjamin, reported she received numerous calls from her sister to go food shopping and to bring her daughter to appointments. Tr. 215. Ms. Benjamin indicated that Hite could not shower without having a severe panic attack, she cancelled many doctor's appointments because Hite could not

---

7.  (...continued)

- Shortness of breath

- Sweating

- Trembling

With agoraphobia, you avoid places or situations because you do not feel safe in public places. The fear is worse when the place is crowded.

Panic Disorder with agoraphobia, MedlinePlus, U.S. National Library of Medicine, National Institutes of Health, http://www.nlm.nih.gov/medlineplus/ency/article/000923.htm (Last accessed June 18, 2013).

sit in the waiting room, and she has had to drive Hite because of her panic attacks. Id. Ms. Benjamin confirmed that Hite has panic attacks that disrupt her sleep, that her current medication Xanax[8] does not control them, and other medication made her worse. Id.

Hite's mother, Caroline Hite, stated that because of her daughter's panic attacks she has had to pick up food orders and prescriptions, and drive and take her daughter to appointments and other activities. Tr. 214. Hite's mother also indicated that she received numerous phone calls where her daughter was crying during a panic attack and that her daughter has run out of stores and has had difficulty sitting in a waiting room because of panic attacks. Id.

For the reasons set forth below, the Court will remand the case to the Commissioner for further proceedings.

**Standard of Review**

When considering a social security appeal, the Court has plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d

---

8. "Xanax (alprazolam) belongs to a group of drugs called benzodiazepines. It works by slowing down the movement of chemicals in the brain that may become unbalanced. This results in a reduction in nervous tension (anxiety). Xanax is used to treat anxiety disorders, panic disorders, and anxiety caused by depression." Xanax, Drugs.com, http://www.drugs.com/xanax.html (Last accessed June 18, 2013).

857, 858 (3d Cir. 1995). However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance.

Brown, 845 F.2d at 1213. In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

**Sequential Evaluation Process**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

10

which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating disability insurance and supplemental security income claims. See 20 C.F.R. §404.1520; Poulos, 474 F.3d at 91-92. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[9] (2) has an impairment that is severe or a combination

---

9. If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further. Substantial gainful activity is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

11

of impairments that is severe,[10] (3) has an impairment or

combination of impairments that meets or equals the requirements

of a listed impairment,[11] (4) has the residual functional capacity

to return to his or her past work and (5) if not, whether he or

she can perform other work in the national economy. Id. As part

---

10. The determination of whether a claimant has any severe
impairments, at step two of the sequential evaluation process, is
a threshold test. 20 C.F.R. § 404.1520(c). If a claimant has no
impairment or combination of impairments which significantly
limits the claimant's physical or mental abilities to perform
basic work activities, the claimant is "not disabled" and the
evaluation process ends at step two. Id. If a claimant has any
severe impairments, the evaluation process continues. 20 C.F.R. §
404.1520(d)-(g). Furthermore, all medically determinable
impairments, severe and non-severe, are considered in the
subsequent steps of the sequential evaluation process. 20 C.F.R.
§§ 404.1523 and 404.1545(a)(2). An impairment significantly
limits a claimant's physical or mental abilities when its effect
on the claimant to perform basic work activities is more than
slight or minimal. Basic work activities include the ability to
walk, stand, sit, lift, carry, push, pull, reach, climb, crawl,
and handle. 20 C.F.R. § 404.1545(b). An individual's basic
mental or non-exertional abilities include the ability to
understand, carry out and remember simple instructions, and
respond appropriately to supervision, coworkers and work
pressures. 20 C.F.R. § 1545(c).

11. If the claimant has an impairment or combination of
impairments that meets or equals a listed impairment, the
claimant is disabled. If the claimant does not have an impairment
or combination of impairments that meets or equals a listed
impairment, the sequential evaluation process proceeds to the
next step.

of step four, the administrative law judge must determine the claimant's residual functional capacity. Id.[12]

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. Id; 20 C.F.R. § 404.1545; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

**Medical Records**

Before the Court addresses the administrative law judge's decision and the arguments of counsel, some of Hite's medical records will be reviewed. The Court will focus primarily on medical treatment received by Hite for her mental condition.

Medical evidence establishes that Hite suffered from panic attacks and anxiety. On September 20, 2002, Hite had an

---

12. If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

appointment with Mauer Biscotti, M.D., her primary care physician, regarding frequent panic attacks and feeling dizzy and very nervous. Tr. 289. Dr. Biscotti's assessment was that Hite suffered from a panic disorder and he prescribed the drug Paxil 10 mg once per day for 4 days and then 20 mg once per day thereafter. Id.

On September 30, 2002, at appointment with Dr. Biscotti, Hite reported that she had a "bad reaction" to the Paxil and was afraid to take it again. Id. Dr. Biscotti's assessment was that Hite suffered from anxiety, discontinued the Paxil and prescribed the drug Xanax 0.5 mg twice daily as needed. Id.

Records document that Dr. Biscotti repeatedly and on a regular basis prescribed for Hite through Hite's date last insured (i.e., December 31, 2007) and up through April 20, 2010, Xanax and other psychotropic drugs. Tr. 518-539 and 559-561. On January 28, 2003, Dr. Biscotti prescribed a quantity of 60 Xanax. Tr. 518.

At an appointment with Dr. Biscotti on February 6, 2003, Hite reported that she was "[f]eeling somewhat better" and "took a leave of absence from work." Tr. 288. Dr. Biscotti's assessment was that Hite suffered from a panic disorder and he prescribed the drug Lexapro 10 mg once daily and directed that Hite continue taking Xanax. Id. The next appointment which is evidenced by a treatment note was on January 8, 2004. Id. However, from February

14

6, 2003, until January 8, 2004, Dr. Biscotti refilled Hite's prescription for Xanax once in the months of March through November, 2003, and twice during the month of December, 2003. Tr. 519-520. The refills on each occasion were for a quantity of 60, 0.5 mg tablets. Id.

On or about January 6, 2004, Hite was involved in a motor vehicle accident where another vehicle struck her driver's side door. Tr. 288. At an appointment with Dr. Biscotti on January 8, 2004, Hite complained of left hip pain. Id. A physical examination of Hite by Dr. Biscotti revealed that Hite had a "tender iliac crest" but she had full range of motion of the hip. Id. Dr. Biscotti's assessment was that Hite suffered from a "hip contusion" and he ordered x-rays. Id. Dr. Biscotti advised Hite to take tylenol or advil. Id. X-rays of Hite's hips were performed on January 9 and 19, 2004, and revealed an unremarkable left hip but a lesion or tumor "in the right femoral neck extending to the proximal intertrochanteric region," i.e., the upper portion of the thigh bone. Tr. 306-307, 347 and 353. This lesion was subsequently concluded to be non-cancerous and monitoring over an extended period revealed no change in size or appearance. Tr. 256, 264-267 and 540.

The record reveals that the next appointment that Hite had with Dr. Biscotti was on October 14, 2004. Tr. 352. At that

appointment Hite complained of intermittent dizziness, headaches and occasional right ear pain over a period of 1 ½ years. Id. Dr. Biscotti's assessment was that Hite suffered from vertigo and anxiety. After January 19, 2004 and up until that appointment, the record reveals that Dr. Biscotti refilled Hite's prescription for Xanax on 10 occasions from January 27 through October 12, 2004. Tr. 521-522. The refills on each occasion were for a quantity of 60, 0.5 mg tablets. Id.

On November 3, 2004, Hite visited the emergency department of Wilkes-Barre General Hospital complaining of left arm numbness. Tr. 392-396. After performing several diagnostic tests, including a CT scan of the head, the impression of the emergency department physician was that Hite suffered from numbness of the left arm and anxiety. Tr. 396 and 404. Hite was discharged on the same day with instructions to follow-up with her family doctor. Tr. 404. From November 3, 2004 to February 8, 2005, Dr. Biscotti refilled Hite's prescription for Xanax on two occasions. Tr. 523.

On February 8, 2005, Hite had an x-ray of the lumbar spine performed at Mercy Hospital in Wilkes-Barre. Tr. 302. The x-ray revealed no fractures but mild scoliosis. Id. On February 10, 2005, Dr. Biscotti refilled Hite's prescription for Xanax. Tr. 524. On February 14, 2004, Hite had an appointment with Dr.

Biscotti after being assaulted by her husband. Tr. 352. Hite complained of low back pain and it was observed that she was very anxious and had lumbar paraspinal muscle spasms. Id. Dr. Biscotti stated that Hite was unable to work because of "panic and anxiety" Id. Dr. Biscotti's assessment was that Hite suffered from multiple abrasions/contusions and low back pain. Id. On March 10, Dr. Biscotti refilled Hite's Xanax prescription. Tr. 524. Additional x-rays of Hite's lumbar spine were performed on March 28, 2005, which were "[e]ssentially unremarkable[.]" Tr. 301.

On April 11 and May 6, 2005, Dr. Biscotti refilled Hite's prescription for Xanax. Tr. 524.

On May 9, 2005, Marianne Spohrer Vitale, D.Ed., a licensed psychologist, located at 48 South Main Street, Suite 509, Pittston, Pennsylvania, evaluated Hite on behalf of the Bureau of Disability Determination. Tr. 359-362. After conducting a clinical interview and mental status examination, Dr. Vitale concluded that Hite suffered from panic disorder with agoraphobia and generalized anxiety disorder with depressed mood. Tr. 362. Dr. Vitale, during the mental status examination, observed that Hite's "[a]ctivity level was marked by occasional motor agitation;" she "was very anxious throughout the interview;" she "required support to participate;" and her "symptoms interfered with her ability to interact." Tr. 360. Dr. Vitale indicated that

17

Hite's prognosis was guarded and that Hite's "condition seems to be longstanding and has not improved significantly." Tr. 362. Dr. Vitale noted that the interview revealed "the presence of elevated anxiety and significant panic attacks with agoraphobia" and that Hite "presented with a depressed mood[.]" Id. Dr. Vitale also noted that Hite's memory was impaired as a result of her anxiety and that Hite "had difficulty organizing her responses to questions, and the interview had to be highly structured for her to remain on task." Tr. 361.

On May 25, 2005, Dr. Biscotti refilled Hite's prescription for Xanax. Tr. 524.

On June 9, 2005, Dr. Vitale completed a statement of Hite's work-related mental abilities. Tr. 363-364. Dr. Vitale found that Hite had slight limitations in her ability to understand and remember and carry out short, simple instructions; moderate limitations in her ability to understand, remember and carry out detailed instructions and make judgments on simple work-related decisions; and marked to extreme limitations in her ability to interact appropriately with the public, supervisors and co-workers and respond appropriately to work pressures in a usual work setting and to changes in a routine work setting. Tr. 363. Dr. Vitale noted that Hite was "agoraphobic" and "has almost no interaction with those other then her family." Id.

On June 13, 2005, Hite had an appointment with Dr. Biscotti at which she complained of a lump on her right upper arm and dizziness. Tr. 287 and 452-453. Hite stated that the lump was not painful and also stated she had no recent trauma. Tr. 287. Dr. Biscotti's assessment was that Hite suffered from a lipoma on her right upper arm.[13] Tr. 452. Dr. Biscotti continued to treat Hite with the drug Xanax and refills of that drug were ordered on June 15 and July 5, 2005, for a quantity of 60, 0.5 mg tablets. Tr. 452 and 525.

On July 13, 2005, John D. Chiampi, Ph.D., a licensed psychologist, reviewed Hite's medical records on behalf of the Bureau of Disability Determination. Tr. 365-382. Dr. Chiampi concluded that Hite suffered from panic disorder with agoraphobia and generalized anxiety disorder. Tr. 377 and 381. He further found that Hite was moderately limited in 13 areas of mental functioning and not significantly limited in 7 areas. Tr. 379-380.

On July 15, 2005, Mary Ryczak, M.D., reviewed Hite's medical records on behalf of the Bureau of Disability Determination and concluded that Hite had the ability to engage in

---

13. A lipoma is a growth of fat cells in a thin, fibrous capsule usually found just below the skin. It is a benign condition and usually does not require treatment. See Dorland's Illustrated Medical Dictionary, 1063 (32nd Ed. 2012); Lipoma, Definition, Mayo Clinic staff, http://www.mayoclinic.com/health/lipoma/DS00634 (Last accessed June 19, 2013).

the physical requirements of the full range of light work. Tr. 383-390.

On July 22, 2005, Hite was evaluated by Cindy Royce, B.A., at Community Counseling Services of Northeastern Pennsylvania. Tr. 271-281. After conducting a clinical interview and mental status examination, Ms. Royce (who is referred to merely as a clinician) concluded that Hite suffered from generalized anxiety disorder, panic disorder <u>without</u> agoraphobia and gave Hite a Global Assessment of Functioning (GAF) score of 49.[14] During the mental status examination Hite was observed to be anxious with only fair insight and judgment, and indicated that she wanted Dr. Biscotti to continue prescribing her medication. Tr. 279-280. At the end of the evaluation, the plan was for Hite to attend outpatient counseling at Community Counseling Services. The first such session was scheduled for September 7, 2005. Tr.

---

14. The GAF score allows a clinician to indicate his judgment of a person's overall psychological, social and occupational functioning, in order to assess the person's mental health illness. *Diagnostic and Statistical Manual of Mental Disorders* 3-32 (4th ed. 1994). A GAF score is set within a particular range if either the symptom severity or the level of functioning falls within that range. <u>Id.</u> The score is useful in planning treatment and predicting outcomes. <u>Id.</u> A GAF score of 31-40 represents some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. <u>Id.</u> A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupational or school functioning. <u>Id.</u> A GAF score of 51 to 60 represents moderate symptoms or any moderate difficulty in social, occupational, or school functioning. <u>Id.</u>

281. On August 4, 2005, Pareshkumar Solgama, M.D., a psychiatrist, reviewed Ms. Royce's evaluation report, diagnosis and treatment plan and approved the diagnosis and treatment plan. Tr. 270. There is no indication that Dr. Solgama examined Hite. Id. Dr. Biscotti continued to treat Hite with the drug Xanax and refills of that drug were ordered on July 25, August 23, Sepetember 21, and October 20, 2005.[15] Tr. 525-526.

Hite attempted to attend counseling at Community Counseling Services, but purportedly could not continue because she was unable to stay in the room for one-on-one treatment due to anxiety. Tr. 65-67. After two counseling sessions, she missed subsequent appointments, and relied on Dr. Biscotti to counsel her. Tr. 67-70, 282-283 and 423-426. She was discharged from the program at Community Counseling Services on October 28, 2005. Tr. 283.

Dr. Biscotti continued to treat Hite with the drug Xanax and refills of that drug were ordered on November 15 and December 15, 2005, and January 15 and February 15, 2006. Tr. 526-527.

At an appointment with Dr. Biscotti on March 3, 2006, Hite complained of light headedness, anxiety and panic attacks. Tr. 286. Dr. Biscotti's assessment was that Hite suffered from

---

15. The quantity prescribed each time increased from 60 tablets to 90 tablets on July 25, 2005. Tr. 525.

anxiety and he continued to treat her with the drug Xanax. Tr. 451 and 527. Dr. Biscotti ordered refills of that drug on March 15 and April 15, 2006. Tr. 527-528.

On May 16, 2006, Dr. Biscotti, after examining Hite, diagnosed her as suffering from shingles of the left forearm and prescribed the drugs Valtrex and Medrol. Tr. 285. Dr. Biscotti also continued to treat Hite with the drug Xanax and refills of that drug were ordered on June 13, July 10 and August 7, 2006. Tr. 528-529.

On August 11, 2006, Michael Vitale, Ph.D., a licensed psychologist, 48 South Main Street, Suite 509, Pittston, Pennsylvania, evaluated Hite on behalf of the Bureau of Disability Determination.[16] Tr. 308-310. After conducting a clinical interview and mental status examination, Dr. Vitale concluded that Hite suffered from panic disorder with agoraphobia and depression and had moderate limitations in her ability to interact appropriately with the public and respond appropriately to work pressures in a usual work setting. Tr. 310-311. Dr. Vitale stated that Hite's prognosis for improvement was guarded and that she does not seem to be making progress with the medication prescribed

---

16. The Court assumes that Dr. Michael Vitale, Ph.D., is either the spouse of or related in someway to Marianne Sophrer Vitale, D.Ed., who evaluated Hite on May 9, 2005, because they have the same business address.

by Dr. Biscotti. Id. Dr. Biscotti continued to treat Hite with the drug Xanax and refills of that drug were ordered on September 1 and 29, 2006. Tr. 529.

On September 22, 2006, Bob Marinelli, Ed.D, a psychologist, reviewed Hite's medical records on behalf of the Bureau of Disability Determination. Tr. 313-330. Dr. Marinelli concluded that Hite suffered from mild major depressive disorder and an anxiety disorder which involved "recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom occurring on the average of at least once a week." Tr. 322. Dr. Marinelli found that Hite was moderately limited in six areas of mental functioning, including the ability to perform activities within a schedule, maintain regular attendance, work in coordination with others, complete a normal workday, interact appropriately with the general public and travel in unfamiliar places or use public transportation. Tr. 313-314.

On October 24, 2006, Hite was examined by Arthur Meyer, M.D., on behalf of the Bureau of Disability Determination. Tr. 332-335. Dr. Meyer performed a physical examination which revealed normal findings. Tr. 333-334. Hite had no tenderness in her back and Dr. Meyer "could not discern any scoliosis on examination of her spine." Id. Hite's grip strength was normal in

both hands; she had normal sensation, motor power, and reflexes; she had "no atrophy above or below any joint;" straight leg raising tests were normal both in the seated and supine positions; she had a normal neurological examination; her blood pressure was normal at 110/60; and she had no limitations because of the "leg tumor." Id. Hite told Dr. Meyer that "she [could not] wait to leave and go home" and Dr. Meyer did observe that Hite appeared anxious. Tr. 333.

From October 25, 2006, through June 9, 2008, Dr. Biscotti continued to treat Hite's anxiety and panic disorders with Xanax and ordered refills (quantity 90, 0.5 mg tablets) of that drug on 22 occasions. Tr. 529-532.

At an appointment with Dr. Biscotti on June 30, 2008, Hite complained of frequent panic attacks, trouble sleeping and loss of short term memory. Tr. 505. At that appointment, Dr. Biscotti completed a statement of Hite's work-related functional mental abilities. Tr. 491-492. Dr. Biscotti found that Hite had extreme limitations (defined as no useful ability) with respect to dealing with work stress and setting realistic goals or making plans independently of others; and marked limitations (defined as unable to function independently, appropriately, effectively, and on a sustained basis) with respect to 9 areas of mental functioning, including interacting appropriately with the public,

24

completing a normal workday or workweek, and maintaining attention and concentration. Tr. 491. Dr. Biscotti stated that Hite's limitations had "existed and persisted" since September 1, 2002, and that it was his opinion that on average Hite would be absent from work more than 2 times a month because of her impairments and treatment for those impairments. Tr. 492.

From July 19, 2008, through September 3, 2009, Dr. Biscotti continued to treat Hite's anxiety and panic disorders with Xanax and ordered refills (quantity 90, 0.5 mg tablets) of that drug on 17 occasions. Tr. 534-539.

On September 9, 2009, Dr. Biscotti completed a statement of Hite's work-related mental functional abilities. Tr. 499-500. Dr. Biscotti found that Hite had marked limitations (defined as unable to function independently, appropriately, effectively, and on a sustained basis) with respect to 6 areas of mental functioning, including dealing with work stress, maintaining attention and concentration, and interacting with the public. Tr. 499. Dr. Biscotti stated that Hite's limitations had "existed and persisted" since September 1, 2002, and that it was his opinion that on average Hite would be absent from work more than 2 times a month because of her impairments and treatment for those impairments. Tr. 500.

The record reveals that Dr. Biscotti on February 4, 2010 in addition to treating Hite's anxiety and panic disorder with Xanax started Hite on the drug Celexa, 10 mg. Tr. 561. On March 4, 2010, Dr. Biscotti increased the dosage of Celexa to 20 mg and on April 20, 2010, considered Klonopin in place of Xanax. Tr. 559-560.

## Discussion

The administrative law judge, at step one of the sequential evaluation process, found that Hite had not engaged in substantial gainful work activity from her alleged onset date of January 15, 2003, through her date last insured of December 31, 2007. Tr. 21.

At step two, the administrative law judge found that Hite suffered from the following severe impairments: "generalized anxiety disorder with panic attacks and benign sclerotic lesion of the right femur[.]" Id. The administrative law judge appears to have found that agoraphobia was not a medically determinable impairment because in the body of his decision he states as follows: "The only reference to agoraphobia as a diagnosis is in the consultative report, not in the treating physician notes."[17] Tr. 27.

_____

17. Just prior to this statement the ALJ references the consultative examination of Hite by Marianne Spohrer Vitale, D.Ed., which took place on May 9, 2005. Tr. 27.

At step three of the sequential evaluation process, the administrative law judge found that Hite's impairments did not individually or in combination meet or equal a listed impairment. Tr. 22-23. Although the administrative law judge at this point mentions the fact that Hite's mother and sister provided statements, he does not elaborate on how he weighed those statements but merely states that the mother and sister provided Hite with assistance. The administrative law judge did not comment on the portions of the statements which indicated that Hite had panic attacks which resulted in Hite, inter alia, cancelling appointments and avoiding traveling outside of her home. Tr. 22.

In addressing step four of the sequential evaluation process in his decision, the administrative law judge found that Hite could not perform her past relevant work as a waitress but that she could perform a limited range of unskilled, light work. Tr. 23 and 89. Specifically, the administrative law judge found that Hite could perform light work as defined in the regulations

> except she can stand/walk for 6 of 8 hours, with a cane for weight bearing support for her right side, can sit for 8 hours provided she have a sit/stand option, cannot climb ladders, ropes or scaffolds, can climb ramps, and stairs occasionally, can use right foot controls occasionally and left foot controls frequently, no limits of upper extremities range of motion or physical strength, can kneel and crawl occasionally at best, no unprotected heights, moderate non-exertional limitations with a capacity to work in a stable work

27

> setting no[t] subject to frequent changes, independent
> nature not of team type orientation, no[t] involve more
> than occasional contact with the general public in
> person or by phone, not involved in processing complex
> or multi-step instructions, work place judgment
> restricted and limited to informing supervisor of
> issue[s] requiring resolution and moderate pace/
> production restrictions.

Tr. 23. In arriving at this residual functional capacity the administrative law judge found that Hite's statements about her functional limitations were not credible and he also rejected the functional assessments of Dr. Biscotti which according to the vocational expert would have precluded any employment on a full-time basis. Tr. 89-90.

At step five, the administrative law judge based on the above residual functional capacity and the testimony of a vocational expert found that Hite had the ability to perform unskilled, light work as a packager, inspector, and order filler, and that there were a significant number of such jobs in the state economy. Tr. 28.

The administrative record in this case is 605 pages in length, consisting, inter alia, of vocational and medical records. The Court has thoroughly reviewed that record. Hite argues, inter alia, that the administrative law judge erred (1) by failing to evaluate properly the statements of Hite's sister and mother and (2) failing to evaluate properly the medical opinion evidence. Those arguments have substantial merit.

28

The Social Security regulations contemplate the administrative law judge considering whether there are any medically determinable impairments and then when setting a claimant's residual functional capacity considering the symptoms of both medically determinable severe and non-severe impairments. 20 C.F.R. § 404.1529. The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. § 404.1520(c). If a claimant has no impairment or combination of impairments which significantly limit the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. Id. If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. § 404.1520(d)-(g). A failure to find a medical condition severe at step two will not render a decision defective if some other medical condition was found severe at step two. However, all of the medically determinable impairments both severe and non-severe must be considered at step two and then at step four when setting the residual functional capacity. The social security regulations mandate such consideration and this court has repeatedly so indicated. See, e.g., Christenson v. Astrue, Civil No. 10-1192, slip op. at 12 (M.D. Pa. May 18, 2011)(Muir, J.); Little v. Astrue, Civil No. 10-1626, slip op. at 19-21 (M.D.Pa.

29

September 14, 2011)(Kosik, J.); <u>Crayton v. Astrue</u>, Civil No. 10-1265, slip op. at 32-35 (M.D.Pa. September 27, 2011)(Caputo, J.); 20 C.F.R. §§ 416.923 and 416.945(a)(2).

The administrative law judge failed to adequately consider whether Hite suffered from agoraphobia. In his apparent rejection of that condition he asserted that only one consultative examiner found that Hite suffered from that condition. That assertion is erroneous. In fact three licensed psychologists indicated Hite suffered from panic disorder with agoraphobia: Marianne Spohrer Vitale, D.Ed.; John D. Chiampi, Ph.D.; and Michael Vitale, Ph.D. Furthermore, in rejecting the opinion of Dr. Marianne Spohrer Vitale that Hite suffered from agoraphobia, the administrative law judge failed to consider the statements of Hite's sister and mother which were supportive of a finding that Hite has symptoms consistent with such a condition.

The failure of the administrative law judge to find that agoraphobia was a medically determinable impairment, or to give an adequate explanation for discounting it, makes his decisions at steps two and four of the sequential evaluation process defective.

The error at step two of the sequential evaluation process draws into question the administrative law judge's residual functional capacity determination and assessment of the credibility of Hite. The administrative law judge found that

Hite's medically determinable impairments could reasonably cause Hite's alleged symptoms but that Hite's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible. This determination by the administrative law judge was based on an incomplete and faulty analysis of all of Hite's alleged impairments. The error at step two is a sufficient basis to remand this case to the Commissioner for further proceedings.

The preference for the treating physician's opinion has been recognized by the Court of Appeals for the Third Circuit and by all of the federal circuits. See, e.g., Morales v. Apfel, 225 F.3d 310, 316-18 (3d Cir. 2000). When the treating physician's opinion conflicts with a non-treating, non-examining physician's opinion, the administrative law judge may choose whom to credit in his or her analysis, but "cannot reject evidence for no reason or for the wrong reason." Id. In light of the above errors relating to the consideration of the statements of Hite's sister and mother and the opinions of the three state agency psychologists, the Court also finds defective the ALJ's rejection of Dr. Biscotti's opinion.

Review of the administrative record reveals that the decision of the Commissioner is not supported by substantial evidence. Therefore, pursuant to 42 U.S.C. § 405(g) the decision

of the Commissioner will be vacated and the case will be remanded to the Commissioner for further proceedings.

An appropriate order will be entered.

United States District Judge

Date: July 2, 2013